Patricia B. HALCOME and Charles D. Halcome, Plaintiffs-Appellants,

v.

The CINCINNATI INSURANCE COMPANY, Defendant-Appellee.

No. 84–8660

Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Nov. 20, 1985.

---

Stephen E. Shepard, Augusta, Ga., for plaintiffs-appellants.

Raymond G. Chadwick, Jr., Augusta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

PER CURIAM:

In this diversity case, plaintiffs appeal from the district court's grant of summary judgment in favor of their insurer. The appellants were seeking to recover on an insurance claim, and the appellee contended that the appellants had breached the contract by failing to provide certain information relevant to their claim. The panel certified a question to the Georgia Supreme Court. That court, 254 Ga. 742, 334 S.E.2d 155 (1985), has answered the question, ruling that the appellants' claim raised questions of fraud, making the appellants' income relevant to the investigation. Accordingly, by refusing to answer questions about their income, appellants breached the contract of insurance.

The appellants argue that summary judgment was not appropriate because a disputed issue of material fact existed: whether one of the appellants intentionally failed to inform appellee of a prior insurance claim or whether he omitted the claim due to memory loss suffered as a side-effect from a prescribed medication. The Georgia Supreme Court, however, ruled that appellants breached the contract by refusing to answer questions regarding their income and did not consider any failure to list prior claims; accordingly, even if appellants' failure to list the prior claim was not a breach, they would not be entitled to recover. Any dispute regarding the failure to list prior claims is therefore immaterial.

The order of the district court granting summary judgment for the appellee is AFFIRMED. The Georgia Supreme Court's response to the certified question is set out below.

In the Supreme Court of Georgia

Decided: Sept. 5, 1985

42249.  HALCOME et al v. CINCINNATI INSURANCE COMPANY.

GREGORY, Justice.

The United States Court of Appeals for the Eleventh Circuit has certified the following question to this court:

STATEMENT OF THE FACTS

"On Friday evening, February 25, 1983, Patricia and Charles Halcome, along with their son and a friend of their son, left their home in Augusta, Georgia, to visit Walt Disney World in Florida.  The Hal-

comes travelled by car. Their stated intention was to arrive back in Augusta in time for their son and his friend to attend school Monday morning. The total driving time for the round trip is approximately eighteen hours.

"The Halcomes testified that on Sunday, February 27, 1983, they packed their automobile at the Holiday Inn where they were staying and, at eleven o'clock a.m., they left the car in the parking lot of the motel. They testified that they were going to visit the Epcot Center. They further testified that when they returned at approximately 9:30 p.m., their car was missing.

"Subsequently, the Halcomes filed insurance claims with The Cincinnati Insurance Company (Cincinnati) for a total property loss of $128,495.66, the major portion of which was for jewelry allegedly contained in the automobile.

"Cincinnati claims that during the investigation of the Halcomes' claim, they learned the following which, in addition to the facts surrounding the alleged theft, led them to be suspicious of the veracity of the claim:

"(1) The Halcomes previously had filed an insurance claim with another carrier for a burglary loss from their residence in 1980. They claimed $136,000.00, the bulk of which was for jewelry.

"(2) Charles Halcome previously had submitted an insurance claim with another carrier for fire loss in 1978. This claim was filed shortly after he had increased the limits of his insurance on the contents of his home. Mr. Halcome failed to disclose this claim in the sworn statements he submitted to Cincinnati.

"(3) In December, 1982, Patricia Halcome increased the coverage on her jewelry with Cincinnati from $82,085 to $120,785.

"(4) In March, 1980, Charles Halcome had been sued for delinquent rental payments.

"(5) In February, 1982, Patricia Halcome, as representative of her son, had filed a suit against Sizemore Security and The Kroger Company in the amount of $250,000. A jury verdict was entered in favor of defendants.

"(6) At the time of the alleged theft, neither Charles nor Patricia Halcome was employed. Mr. Halcome had been disabled since 1976 due to a heart condition and was receiving disability payments from undisclosed sources.

"(7) The Halcomes' insurance policy contained the following provisions:

"SECTION I—CONDITIONS:

2. Your Duties After Loss. In case of loss to insured property, you agree to the following ...

d. as often as we reasonably require:

... (2) provide us with records and documents we request, permit us to make copies; and (3) submit to examination under oath and subscribe the same.

"SECTION I AND II—CONDITIONS:

3. Concealment or Fraud. We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

8. Insured's Duties in the Event of Loss—Part III:

... (b) File with the company, within ninety-one (91) days after loss, his sworn proof of loss in such form and including such information as the company may reasonably require and shall, upon the company's request, exhibit the damaged property and submit to examination under oath.

"Pursuant to the above quoted provisions, a representative of Cincinnati requested that the Halcomes submit to an examination under oath. The Halcomes answered numerous questions regarding their activities at the time of the loss, and they produced appraisals estimating the value of the stolen jewelry and the comparable data for an automobile similar to their 1981 Cadillac. The Halcomes, however, refused to answer questions or otherwise to supply information with regard to: (1) their income and sources of income; (2) their bank accounts, savings accounts, accountant or bookkeeper; (3) whether or not Charles D. Halcome had ever been charged with or

convicted of a crime; (4) their federal income tax returns and W–2 forms for the years 1978 through 1982; and (5) their federal income tax returns and W–2 forms for the five years preceding Charles D. Halcome's disability. Cincinnati claims that it sought this information in order to determine the Halcomes' possible motives for submitting a false, fraudulent, or exaggerated claim, and that the failure of the Halcomes to provide this information prohibited the company from completing its investigation of the claim. Thus, according to Cincinnati, this refusal constituted a failure to comply with the policy provisions which allow Cincinnati to examine the insured. The Halcomes claim that such avenues of inquiry were irrelevant to the insurer's investigation given the absence of any facts suggesting that the claim was fraudulent. Specifically, the Halcomes' claim that Cincinnati never impeached or contradicted any fact related by the Halcomes about their trip."

"QUESTION FOR THE SUPREME COURT OF GEORGIA:

"On the basis of the above facts, did the Halcomes breach their contract of insurance, thereby barring any recovery by the insured, by refusing to provide to The Cincinnati Insurance Company with information or documents about any of the following:

"(1) Charles and Patricia Halcome's income and sources of income for the years 1971 through 1976 and 1978 through 1982.

"(2) The Halcomes' bank accounts, savings accounts, and their accountants or bookkeepers.

"(3) Whether or not Charles D. Halcome had ever been convicted of a crime.

"(4) The Halcomes' federal tax returns and W–2 forms for the years 1978 through 1982.

"(5) The Halcomes' federal income tax returns and W–2 forms for the five years preceding Charles Halcome's disability, 1971 through 1976."

We answer the certified question in the affirmative. If the Halcomes failed to provide *any* material information called for under Section I(2)(d) of the policy, supra, they breached the insurance contract. Without deciding whether the Halcomes breached the contract as to the remaining requested information, we conclude they breached the contract by refusing to provide information relating to their income.

The Halcomes do not deny that the terms of the policy require the furnishing of the information requested. Nor do they deny their continuing refusal to furnish the information. Thus, there is a breach of the contract unless some principle excuses the failure by the Halcomes to furnish the information. The Halcomes contend the principle which excuses their refusal and prevents a breach is that the information sought is not relevant to the claim under investigation, and is of a private nature so that its disclosure should not be required. Under other circumstances we might be inclined to agree, but here there is evidence of possible fraud. A complete investigation of the claim includes an investigation of the suspected fraud. Under these facts the Halcomes' recent income and sources of income are relevant. There is no other basis set forth to excuse the refusal to furnish the information. Therefore, the breach has occurred.

*Certified question answered. All the Justices concur, except Smith, J. concurs in the judgment only.*