Drew D. HILL, Jr., Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA, Defendant and Third–Party Plaintiff,

v.

Mary Alice Brim Jordan, Third–Party Defendant.

No. 1:97–CV–107–2 WLS.

United States District Court, M.D. Georgia, Albany Division.

Sept. 30, 1999.

---

Wilbur T. Gamble, III, Dawson, GA, for Drew D. Hill, plaintiff.

Lawrence Brannen Domenico, Wayne D. Taylor, Jr., Atlanta, GA, for Safeco Insurance Company of America, defendant.

Donald A. Sweat, Mr., Albany, GA, for Mary Alice Brim Jordan, third-party defendant.

## ORDER

SANDS, District Judge.

Plaintiff Drew D. Hill, Jr., ("Hill") filed the above-styled action, asserting that Defendant Safeco Insurance Company of America breached its insurance contract and is liable for bad faith penalties. Presently before the Court is the Defendant Safeco's Motion for Summary Judgment (Doc. No. 47) and Third Party Defendant

Jordan's Motion for Summary Judgment (Doc. No. 54). For the following reasons, the Court finds the pending Motions for Summary Judgment should be granted.

## FACTUAL BACKGROUND

Safeco issued a homeowner's policy to Plaintiff Hill with an effective policy period from August 7, 1995, to August 7, 1996. This policy provided coverage to the Plaintiff for any damage to the Plaintiff's personal property, no matter where it was located. As a part of that contract, the Plaintiff was required to fulfill certain duties in case of a loss to which the insurance may apply, including: (1) to give immediate notice to the insurance company or its agent; (2) to protect the property from further damages, to make reasonable and necessary repairs to protect the property, and to keep an accurate record of repair expenditures; and (3) to exhibit the damaged and undamaged property, to provide the insurance company with requested records and documents, and to submit to examinations under oath. Splaine Aff. at ¶ 5, Ex. 1.

On May 18, 1996, Third Party Defendant Mary Alice Brim Jordan and Harold Mitchell were involved in a vehicular accident, causing one of the vehicles to crash into a building owned by Plaintiff Hill. As a result of this collision, the Plaintiff asserted that his building and some of its contents, such as arrowheads among other items, were damaged or destroyed. Pl.'s Compl. at 5, 6. Plaintiff Hill initially submitted a claim to Ms. Jordan's insurance company, ITT Hartford Insurance Company ("Hartford Insurance"). Hartford Insurance retained Mr. Worley to investigate Hill's claim. Worley Aff. at ¶ 5.

Sometime before Mr. Worley got involved in the action, the Plaintiff, himself, began to clean up the debris caused by the accident. Pl.'s Depo. at 56. Mr. Hill threw away the rubble, including the pieces of arrowheads that Mr. Hill decided were not recognizable as arrowheads. Pl.'s Depo. at 59–62. Out of all of the arrowheads at issue, only 102 were salvaged from the debris. Pl.'s Depo. at 162.

In submitting his claim for the arrowheads, the Plaintiff asserts he never had counted the arrowheads so could only guess as to the number and value of the arrowheads. Pl.'s Depo. at 74–75. During one of the first conversations with Mr. Worley, Hill estimated the total number of arrowheads to be about three hundred to four hundred. Pl.'s Depo. at 72. Hill suggested that the value of these of these arrowheads would be about $12,500.00. Worley Aff. at ¶ 7. Upon further reflection and review, Hill determined that he had many more than four hundred arrowheads and that the number of arrowheads was closer to two thousand arrowheads. Pl.'s Depo. at 80. Specifically, when Hill observed the 102 remaining arrowheads in a box like that in which he had stored his collection, he realized how few there were and that he had many more than the original estimate of 350. Pl.'s Depo. at 80. Hill asserts that he had two full boxes of arrowheads, and each box would hold at least 1,000 arrowheads. *Id.* Hill's estimate as to the value of arrowheads also changed after he showed the remaining arrowheads to appraisers. Hill's latest estimate regarding the damage to the 2,000 claimed arrowheads is approximately seventy-five thousand dollars, based in part upon information received during Mr. Williams's appraisal of the 102 remaining arrowheads. Pl.'s Depo. at 94–96.

On November 14, 1996, the Plaintiff notified Safeco for the first time about the May 16, 1996, automobile accident which damaged his property. Pl.'s Resp. to Def.'s Req. for Admis., No. 5; Splaine Aff. ¶ 6. The Plaintiff asserts that he was attempting to have Hartford Insurance pay for his damage and did not know his personal insurance policy would cover the damage caused by the accident. Pl.'s Depo. at 92. By the time Safeco was notified about the accident, only 102 arrowheads remained. Pl.'s Depo. at 162–62.

After Safeco refused to pay the claim, Plaintiff Hill filed suit in Dougherty County Superior Court, alleging three counts: (1) breach of contract; (2) bad faith refusal of insurer to pay legitimate claim; and (3) bad faith under O.C.G.A. § 13–6–11. The Defendant removed the action to this Court and later filed the presently pending summary judgment motion asserting, among other bases, that the Plaintiff did not fulfill his contractual obligations because he did not (1) give immediate notice to the insurance company or its agent; (2) failed to protect the damaged property and exhibit all damaged property upon request; and (3) failed to provide the insurance company with requested records and documents, and to submit to an examination under oath. Third Party Defendant Jordan likewise filed a Motion for Summary Judgment, adopting Safeco's brief in support of its Motion for Summary Judgment.[1] The Court finds the Defendants' Motions for Summary Judgment should be granted on three separate bases, and addresses each basis separately below.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case." *Fitzpatrick,* 2 F.3d at 1116 (quotations and citations omitted).

If the moving party fails to overcome this initial burden, the Court must deny the motion for summary judgment without considering any evidence, if any, presented by the non-moving party. *Fitzpatrick,* 2 F.3d at 1116. If, on the other hand, the moving party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial. *Id.* Moreover, the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party. Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

### II. ANALYSIS

A. ***Whether Plaintiff Complied with Requirement of Insurance Contract by Preserving and Presenting all Damaged and Undamaged Property***

■ The Defendant asserts Mr. Hill did not preserve all the damaged arrowheads

---

1. As Third Party Defendant Jordan adopts Defendant Safeco's Brief for Summary Judg-

ment, the Court addresses the initial brief as one for purposes of this Order.

for which he asserts he is entitled to compensation. In support, Defendant Safeco points to the insurance contract which as a condition precedent to any recovery requires the insured to exhibit the damaged and undamaged property as often as the insurer reasonably requires.

The contract specifically provides that after a loss to which the insurance policy may apply, the Plaintiff must as often as Safeco reasonably requires "exhibit the damaged and undamaged property." (Def. Safeco's Brief in Supp. of Motion for Summ.J., Ex. 1, Safeco Insurance Company Insurance Policy ("the Policy"), at pg. 7, Section 1: Conditions ¶ (2)(d)(1)). Furthermore, Section I: Conditions, Paragraph 6 provides: "No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage." *Id.* at Ex. 1, pg. 9. Such clauses are conditions precedent to recovery and are binding against the insured. *Townley v. Patterson,* 139 Ga.App. 249, 228 S.E.2d 164, 165 (1976). As stated by Georgia courts, "the conditions set out in the policy contract are an essential part of the consideration for the insurer assuming the risk and the insured becomes bound by those conditions by his acceptance of the policy contract." *Buffalo Ins. Co. v. Star Photo Finishing Co.,* 120 Ga.App. 697, 709, 172 S.E.2d 159, 167 (1969) (*quoting* Mitchell, Georgia Law on Insurance, 243 § 47–103).

█ The Court finds that the Defendant has supported its initial burden in moving for summary judgment by pointing to affirmative evidence demonstrating that the non-moving party will be unable to prove his case. The burden, hence, switches to Plaintiff to show the existence of a genuine issue of material fact that remains to be resolved at trial. Plaintiff is not asserting

that he should be excused from this condition of the contract or that this condition is not valid or otherwise inapplicable to him. Instead, Mr. Hill asserts he fulfilled his contractual obligation because he saved all the damaged arrowheads for inspection, asserting "there were no others to be saved because of the extreme damages done to the arrowheads." Pl.'s Resp.Br. at 15.

In reviewing the Plaintiff's own testimony as presented in his deposition, Mr. Hill insists he preserved all undamaged and damaged arrowheads which he deemed would be recognizable and useful to the insurance company. Pl.'s Depo. at 61. He threw away the bits and pieces of arrowheads which Mr. Hill decided were not recognizable as arrowheads.[2] *Id.* Mr. Hill asserts that he "used a detailed sifting process to salvage all arrowhead pieces." Pl.'s Resp.Br. at 14. This consisted of placing a wire screen over a wheelbarrow, scooping the rubble up, and sifting it through the wire screen. Mr. Hill asserts that what fell through the wire screen was discarded, and what was left on top of the wire screen and was recognizable as arrowheads were saved. Pl.'s Depo. at 63–65. The Plaintiff, however, admits that material which did not fall through the sifter was also thrown away. Pl.'s Depo. at 65–66. After Mr. Hill finished cleaning the debris from the accident, out of the 2,000 arrowheads at issue, only 102 were salvaged from the debris. Pl.'s Depo. at 162.

The Court does not find that the Plaintiff has properly supported his burden to show a material fact for the jury. It is undisputed that the Plaintiff had the obligation to present *all* damaged *and* undamaged property to the insurer at the insurer's request. The Plaintiff does not

2. In response to a question asking whether an expert on arrowheads could have recognized the discarded pieces as a part of an arrowhead, Mr. Hill stated, "[I]f you have got an arrowhead this long and there is a little tip of it like this, yes, you would know that came

from an arrowhead, but it would only be a tip that may be half the size of your finger. I did not think that that had value as far as representing what that arrowhead was. Now that is the way it worked." Pl.'s Depo. at 61–62.

dispute that he failed to preserve the rubble and chips from the damaged 2,000 arrowheads or that he presented only 102 arrowheads to Safeco upon demand. Instead, the Plaintiff is requesting, in essence, that he be excused from the terms of the contract because the damage to the remaining arrowheads was too great. The Plaintiff, however, admits he intentionally discarded the bits and pieces of the arrowheads that he determined on his own would not be useful. As stated in his deposition, "I saved the arrowheads that I thought would be recognizable and useful to Hartford in determining what I had. The other stuff was merely rubble. I threw it out with the brick rubble, with the wood chip rubble, with the mortar rubble." The Court cannot find that the Plaintiff fulfilled his contractual obligation to preserve and exhibit the damaged property when the Plaintiff admits he deliberately discarded bits and pieces of arrowheads because he did not feel they were representative of arrowheads. Even if the arrowheads were extremely damaged, the Plaintiff was required to preserve that "rubble" and present it to the insurance company upon demand—an obligation which the Plaintiff failed to perform. It should also be noted that Plaintiff does not contend that he could not have preserved the discarded property for inspection. Accordingly, the Court finds this portion of the Defendant's summary judgment motion should be granted as to the portion which the Plaintiff failed to comply with the condition precedent. However, as Mr. Hill preserved and presented 102 arrowheads, the Court finds these arrowheads are still at issue since they were preserved.

### B. *Whether Plaintiff Complied with Requirement of Insurance Contract by Providing Immediate Notice of Loss*

According to the Defendant, the Plaintiff is barred from recovering because the Plaintiff waited for six months before he gave his insurance company notice of the accident and the Defendant was prejudiced as the Plaintiff discarded most of the wreckage. In support, Defendant Safeco points to the insurance contract which as a condition precedent to any recovery requires the insured to notify the Safeco of any potential loss immediately. It is undisputed that Mr. Hill did not notify his insurance company of the loss to his property until November 14, 1996, about six months after the damage occurred. Pl.'s Resp. to Def.'s Request for Admissions, No. 5. By the time his insurance company was notified about the accident, only 102 arrowheads remained. Pl.'s Depo. at 162–62.

The homeowner's insurance policy protects the Plaintiff's personal property no matter where it was located. The contract specifically provides that after a loss to which the insurance policy may apply, Mr. Hill must "give immediate notice of loss" to the insurance company or its agent. (Def. Safeco's Br. in Supp. of Motion for Summ.J., Ex. 1, Safeco Insurance Company Insurance Policy ("the Policy"), at pg. 7, Section 1: Conditions ¶ (2)(a)). Section I: Conditions, Paragraph 6 provides: "No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage." *Id.* at Ex. 1, pg. 9. Such clauses are conditions precedent to recovery and are binding against the insured. *Townley v. Patterson,* 139 Ga.App. 249, 228 S.E.2d 164, 165 (1976).

The Plaintiff denies this would bar recovery, but asserts that determining the reasonableness of any delay in reporting an insurance claim is generally a jury question. Plaintiff Hill asserts he was working with Hartford Insurance to pay his claims and did not know Safeco would cover this loss. The Plaintiff relies on case law to support the proposition that where an insured did not know the policy might afford coverage for a collision provides a sufficient basis to allow the action to pro-

ceed to trial so that the jury may determine whether this was a reasonable basis.

The first case the Plaintiff points to in support of his proposition is *Georgia Mutual Ins. Co. v. Criterion Ins. Co.*, 131 Ga.App. 339, 206 S.E.2d 88 (1974). In that action, the Pyes bought a vehicle for their minor son. Twenty-nine days after they purchased this automobile, the son was involved in an accident. *Id.*, 206 S.E.2d at 90. The insurance contract provided that notice of any accident must be submitted "as soon as practicable." *Id.* at 91. The Pyes did not notify Georgia Mutual until about four months after the accident, asserting they did not give notice earlier because they did not know the policy would afford coverage of the collision on the newly acquired Mustang. The court held this was a jury question to determine whether the insured had met the requirements of the policy. *Id.*

A similar question was involved in *State Farm Mutual Automobile Ins. Co. v. Sloan*, 150 Ga.App. 464, 258 S.E.2d 146 (1979). In that action, the insured's son was involved in an automobile accident which resulted in a law suit. The terms of the insurance policy required the insureds to notify State Farm Insurance Company in writing as soon as practicable. *Id.*, 258 S.E.2d at 147. The Sloans notified their insurance carrier of the accident approximately six months after the accident occurred. *Id.* The Sloans asserted that they did not know their son would be covered under the insurance policy because their son was not named as an insured and, further, he was driving a car not covered by the insurance policy. *Id.* at 146. The court held that determining whether the Sloans notified their insurance company "as soon as practical" was a jury question. *Id.* at 149. State Farm moved for reconsideration, asserting that the new decision in *Atlanta Intl. Prop. v. Georgia Underwriting Assn.*, 149 Ga.App. 701, 256 S.E.2d 472, 473 (1979), would mandate that State Farm be granted summary judgment. The court denied this motion, finding the

cases factually distinguishable as the notice requirement in the policy involved in *Atlanta Intl. Prop.* required that "the insured shall give *immediate* written notice to this Company of any loss while State Farm's policy required notice to be given "as soon as practicable." " *Id.*

In reviewing the cases and the language of the policy, the Court does not find the Plaintiff has supported his obligations under Rule 56(e) requiring the non-moving party to set forth specific facts showing that there is a genuine issue for trial. Mr. Hill's justification is the simple assertion that he did not know his policy afforded coverage, but has given no support for this bald assertion. As a named insured to the policy, Mr. Hill is deemed to know the contents of the policy to which he agreed. *Southern Guar. Ins. Co. v. Preferred Risk Mut. Ins. Co.*, 257 Ga. 355, 359 S.E.2d 665, 667 (1987).

Although Plaintiff attempts to rely on cases to assert lack of knowledge may be found as a sufficient justification for not immediately notifying the insurance carrier, the Court finds these cases distinguishable. First, the cases in which the Plaintiff relies involved claimants who were not specifically named in the policy. Additionally, the insureds had a supporting basis for their ignorance, such as an ambiguity in the policy provision—it was not merely a conclusory statement. Even more significant is that in those actions, the policy required that notice be given "as soon as practical." In the action at hand, the plaintiff's policy required immediate notice. The Plaintiff in this action did not notify the company until about six months after the accident.

In a like provision in *Atlanta Intl. Prop. v. Georgia Underwriting Assn.*, 149 Ga. App. 701, 256 S.E.2d 472, 473 (1979), the policy at issue required the insured to give notice immediately. The insureds gave notice about eight to nine months after their loss, asserting that the contract was ambiguous. The court held the contract was not ambiguous, and that the insureds

did not comply with the immediate notice requirement of the contract, thus voiding the coverage on the claims. *Id.*

Mr. Hill has not asserted that Safeco has waived the immediate notice requirement or should be estopped from asserting it; moreover, the Plaintiff has not pointed to any facts justifying why it would be unreasonable to demand that he comply with the provisions in the contract, especially as he is deemed to know the contents of the policy to which he agreed. *Southern Guar. Ins. Co. v. Preferred Risk Mut. Ins. Co.,* 257 Ga. 355, 356, 359 S.E.2d 665 (1987). "[F]ailure to comply with notice of loss provisions will, in the absence of waiver or estoppel or other facts constituting a justification to the insured or making it unreasonable to demand full compliance, be a bar to an action on the policy where such provision is made a condition precedent by the terms of the contract." *Atlanta Intl. Prop. v. Georgia Underwriting Assn.,* 149 Ga.App. 701, 256 S.E.2d 472, 473 (1979). *See also Buffalo Ins. Co. v. Star Photo Finishing Co.,* 120 Ga.App. 697, 709, 172 S.E.2d 159, 167 (1969) (holding that an insured's defense of not reading the policy is not a defense to the conditions precedent since those conditions set out in the policy contract are "an essential part of the consideration for the insurer assuming the risk and the insured becomes bound by those conditions by his acceptance of the policy contract"). Additionally, unlike the policies in the cases cited by the Plaintiff, the instant policy clearly states that all of the Plaintiff's property is covered wherever it is located. Therefore, there is no ambiguity as to whether the property was covered.

For the reasons above, the Court finds the Plaintiff did not fulfill this condition precedent, and is thus barred from filing the current action under the terms of the contract. Hence, the Defendant's Motion for Summary Judgment should be granted on this ground.

## C. *Plaintiff's Failure to Provide Requested Documentation*

As a separate ground to support its summary judgment motion, Safeco asserts that Mr. Hill refused to supply any requested documentation after the loss, in violation of the insurance contract provisions. Specifically, the Plaintiff refused to supply any of his financial records, including his income tax returns from 1994 through 1996 (Hill Depo. at 122); his personal checking account records for the year of 1996 (*id.* at 122–23); closing statements regarding any promissory notes or other loans which remained outstanding on the date of the accident (*id.* at 123); all personal savings account records (*id.* at 123–24); all personal financial statements up to the period before the accident (*id.* at 124); records which reflected the Plaintiff's net worth for the two-year period before the accident (*id.* at 124); records of any real estate that the Plaintiff owned (*id.*); installment loan or charge accounts and monthly telephone statements for 1995–96 (*id.*); information on life insurance policies (*id.* at 124–25); and any records which showed ownership interest in stock, securities, or bonds (*id.* at 125).[3]

The insurance contract provided, in relevant part:

"SECTION I—CONDITIONS: ...

2. Your Duties After Loss. In case of loss to which this insurance may apply, you must perform the following duties: ...

    d. as often as we reasonably require: ...

---

**3.** Two further requests were to provide Safeco with any original appraisals of the arrowheads and any documents relating to the purchase of the arrowheads. Mr. Hill did not provide original appraisals on all the arrowheads as the appraisals did not exist until after the accident. The Plaintiff did submit appraisals of the remaining arrowheads which he obtained after the accident. Hill also did not submit any documents relating to the purchase of the arrowheads because such did not exist.

(2) provide us with records and documents we request, permit us to make copies"

Def. Safeco's Br. in Supp. of Motion for Summ.J., Ex. 1, the Insurance Policy, at pg. 7. Further, Section I: Conditions, Paragraph 6 provides: "No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage." *Id.* at pg. 9. Such clauses are conditions precedent to recovery and are binding against the insured. *Townley v. Patterson*, 139 Ga.App. 249, 228 S.E.2d 164, 165 (1976).

The Court finds that Safeco has supported its initial burden in this portion of its summary judgment motion by pointing to affirmative evidence demonstrating that the non-moving party will be unable to prove his case. The burden, again, switches to Plaintiff to show the existence of a genuine issue of material fact that remains to be resolved at trial. The Plaintiff neither disputes the terms of the contract nor denies that he refuses to furnish this information. Accordingly, there is a breach of the insurance contract unless some principle excuses this failure. *See Halcome v. Cincinnati Ins. Co.*, 254 Ga. 742, 334 S.E.2d 155 (1985).

The Plaintiff admits that none of the financial records have, even at this time, been presented to Safeco, asserting that Safeco should explain its reasoning in requiring these documents. Safeco has asserted that it wants these documents because the Plaintiff has changed his story several times regarding the number and worth of the arrowheads from 350 arrowheads valued at approximately $12,000.00, to 2,000 arrowheads worth over $75,000.00. The Plaintiff is essentially contesting whether this is a sufficient reason for requiring the Plaintiff to produce these documents, as Mr. Hill did not orchestrate the automobile accident which caused damage to his property. As further justification for not producing these documents, Mr. Hill states that he thought the request was irrelevant and over-burdensome, and that the insurance company did not request these documents until after he filed a claim.

The Court finds reviewing *Halcome* instructive in reviewing this issue. *Halcome*, 334 S.E.2d at 155. In that action, during a trip to Florida, the Halcomes' automobile was stolen. *Id.* at 156. The Halcomes filed a claim with their insurance company for $128,495.66, which included the loss of a 1981 Cadillac and jewelry allegedly contained in the car. In reviewing and investigating the insured's claim, the insurance company learned that neither of the Halcomes were employed during the time of the theft and the Halcomes had previously filed an insurance claim with another carrier for a burglary loss, including a substantial amount of jewelry. *Id.* In a similar provision of the insurance contract, the insured was obligated to provide records and documents requested by the insurer as often as the insurer reasonably requires. Cincinnati Insurance Company, pursuant to this provision, sought the insured's bank account records, all sources of income from 1971 through 1976 and 1978 through 1982, the tax returns and W–2 forms from 1978 through 1982 and from 1971 through 1976, and information regarding whether Mr. Halcome had ever been convicted of a crime. *Id.* The Halcomes objected because they claimed this information was irrelevant to their claim and of a private nature to which the insurance company would not be entitled. *Id.* at 157. The Georgia Supreme Court disagreed, holding that such circumstances made the recent income and sources of income relevant. The Court denied the insured's rationale in refusing to render the desired information, holding that the insured breached the contract by their refusal. *Id.*

In the current action, Mr. Hill attempts to differentiate *Halcome* asserting that in that case the insurance company's demands for financial documents were warranted because the insurer had a history of

submitting unverifiable insurance losses and neither the husband or wife were employed. Pl.'s Resp.Br. at 18. However, the Court notes that the current action likewise includes what could be objectively considered as questionable circumstances. First, the Plaintiff discarded all arrowhead debris with the exception of 102 arrowheads. Further, there was an extreme change from the original estimate of the number of arrowheads, expanding from 350 arrowheads to 2,000 arrowheads, and the corresponding original estimated value of the arrowheads increasing from $12,000.00 to over $75,000.00. Additionally, the insurance company was notified about the loss several months later, after the arrowhead remains were discarded. Accordingly, this action presents a reasonable basis from the insurer's perspective of whether the insurance claim was exaggerated.

██ Moreover, in reviewing the language of the policy at issue, Safeco was not required to present any type of explanation before it required documents to be submitted. These were terms that both parties agreed to before the loss occurred. Whether Mr. Hill agrees with Safeco's reasoning to require documentation is irrelevant. As held by the Georgia Court of Appeals, "the conditions set out in the policy contract are an essential part of the consideration for the insurer assuming the risk and the insured becomes bound by those conditions by his acceptance of the policy contract." *Buffalo Ins. Co. v. Star Photo Finishing Co.,* 120 Ga.App. 697, 709, 172 S.E.2d 159, 167 (1969) (*citing* Mitchell, Georgia Law on Insurance, 243 § 47–103). Mr. Hill chose not to disclose ANY of the requested financial documents and did not contact Safeco with any objections to the production of documents before the lawsuit was initiated. Pl.'s Depo. at 127–28; Taylor Aff. ¶ 6. In light of Mr. Hill's inadequate explanation for the complete non-production of the documents, the Court finds the Plaintiff breached his obligation under the contract. This ruling does not encompass whether the Plaintiff should have produced all documents required. However, it is clear that the Plaintiff refused to produce any financial documents, which was clearly in breach of the contract. His justification of irrelevancy and over-burdensomeness is not a sufficient justification for complete refusal. *Compare with Diamonds and Denims, Inc., v. First of Georgia Ins. Co.,* 203 Ga.App. 681, 417 S.E.2d 440 (1992) (finding that insured did not automatically violate insurance provision to produce records where the insured could not produce the requested records because they were alleged to have been destroyed in the very fire for which the insurance contract provided). Plaintiff does not assert that the requested financial records are unobtainable. Accordingly, the Court finds the Defendant's Motion for Summary Judgment should be granted as to this basis as well.

### D. *Bad Faith Penalties*

██ Along with the breach of contract count, the Plaintiff also alleged Safeco was liable for bad faith penalties under both O.C.G.A. § 33–4–6 and under O.C.G.A. § 13–6–11. Under Georgia law, an insurer may be liable to pay the holder of the policy a bad faith penalty and all reasonable attorney's fees if the insurer refuses to pay a loss which is covered by a policy of insurance within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith. O.C.G.A. § 33–4–6. In the current action, as the Court has found the Defendant is not liable to the insured since the Plaintiff breached three separate conditions precedent, the claim for bad faith penalties must likewise fail. Moreover, statutory penalties for bad faith refusal to pay are not authorized "where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." *Rice v. State Farm Fire & Cas. Co.,* 208 Ga. App. 166, 430 S.E.2d 75, 78 (1993). In the current action, the Plaintiff breached three conditions precedent in the policy, including discarding bits and pieces of the ar-

rowheads. Accordingly, the Court finds that the Plaintiff's claim for bad faith penalties must fail as such actions taken by the Plaintiff would create reasonable grounds to contest the claim.

The final claim in the Plaintiff's complaint is bad faith penalties under O.C.G.A. § 13–6–11. As Plaintiff acknowledges that this section does not apply to the action at hand and that O.C.G.A. is the exclusive remedy for bad faith refusal to pay a claim, this claim must fail.

### CONCLUSION

Therefore, for the alternative reasons above, the Court finds Defendant Safeco Insurance Company's Motion for Summary Judgment (Doc. No. 47) and Third Party Defendant Jordan's Motion for Summary Judgment (Doc. No. 54) should be, and hereby are, **GRANTED.** The Court **DIRECTS** the Clerk of the Court to **ENTER JUDGMENT** in favor of **DEFENDANT.**