[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 3, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-12051
Non-Argument Calendar

_____

D. C. Docket No. 06-00218-CV-WTM-4

MICHAEL HALL,

Plaintiff-Appellant,

versus

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(February 3, 2009)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

This lawsuit arises out of an insurance dispute between Plaintiff-Appellant

Michael Hall and Defendant-Appellee Liberty Mutual Fire Insurance Company

("Liberty"). The district court granted summary judgment in favor of Liberty on

Hall's claims for breach of contract and a bad faith penalty. The instant appeal

followed.

## I. Facts

Hall's home in Savannah, Georgia, burned on August 1, 2005. At the time

of the fire, Hall held a homeowner's insurance policy issued by Liberty. In a

section entitled "Your Duties After Loss," the policy placed a number of duties on

the insured following a loss to covered property, including: (a) "[p]rovide us with

records and documents we request and permit us to make copies;" (b) "[s]ubmit to

examination under oath, while not in the presence of any other 'insured,' and sign

the same;" and (c) "[s]end to us, within 60 days after our request, your signed

sworn proof of loss" setting forth various specified pieces of information related to

the claim. The policy prohibited the insured from bringing suit "unless the policy

provisions have been complied with and the action is started within one year after

the date of loss."

Hall was incarcerated at the time of the fire and remained incarcerated until

November 17, 2006. Following the fire, Hall promptly filed a claim with Liberty

and was interviewed from jail on August 16, 2005 by William L. Arthur, a special

investigator for Liberty. Hall alleges that Arthur told him that he did not have to

2

submit a proof of loss form because the initial insurance adjustor had already examined the house and its contents. Nonetheless, on September 21, 2005, Liberty sent a letter to Hall requesting a completed proof of loss form. Hall did not comply with that request or three subsequent requests, the last of which was sent to Hall's attorney in a letter dated May 8, 2006. Liberty also made at least seven written requests between November 8, 2005 and May 8, 2006 asking Hall's attorney to provide dates in which Liberty could obtain relevant documents and conduct examinations under oath ("EUOs") with Hall and other individuals claiming losses under the policy. Because Hall's attorney did not provide the requested information, Liberty sent a letter dated June 6, 2006, unilaterally scheduling a meeting for June 15, 2006, for the purposes of receiving documents from Hall and conducting EUOs with individuals claiming losses under the policy. The letter specifically requested that Hall's attorney bring several documents, including the "insurance policy," "personal income taxes for the year 2004 and 2005," "estimates for the repair or replacement of items lost or damaged," and "appraisals on any of the property lost in the fire." Hall's attorney sent back a letter agreeing to the proposed date, but noting that Hall would be unable to attend, Hall's 2004 tax return was unavailable because it was destroyed in the fire, and the estimates would not be prepared until late June 2006.

On June 15, 2006, both parties' attorneys met with the two individuals

3

scheduled for EUOs. Hall's attorney did not provide any of the documents previously requested by Liberty and did not submit a completed proof of loss form. A dispute arose between the attorneys as to whether the EUOs could be recorded and/or used in court. As a result, the EUOs did not proceed as scheduled. Liberty then sent another letter on June 20, 2006, encouraging Hall's attorney to reschedule the EUOs.

Hall filed suit in Georgia state court on July 31, 2006, seeking contractual damages, bad faith damages, and attorney's fees. As of the date of commencement of the lawsuit, Hall had still not submitted any records to Liberty and no EUOs had been conducted. The action was thereafter removed to federal court by Liberty, based on the parties' diversity of citizenship.

Liberty brought a motion for summary judgment on the grounds that: (1) Hall was not entitled to contractual damages because he did not comply with the prerequisites to suit found in the insurance agreement; and (2) Hall was not entitled to bad faith damages or attorney's fees because Hall failed to cooperate with Liberty in its investigation. The district court agreed and granted summary judgment in favor of Liberty on both grounds. Hall now appeals the district court's grant of summary judgment on the breach of contract claim.[1]

---

[1] Because Hall does not argue that the district court erred in granting summary judgment in favor of Liberty on Hall's bad faith failure to pay claim, this issue has been waived. See United States v. Curtis, 380 F.3d 1308, 1310 (11th Cir. 2004) (noting the "long-standing rule in

4

## II. Discussion

### A. Standard of Review

We review the district court's denial of summary judgment <u>de novo</u>. <u>Holloman v. Mail-Well Corp.</u>, 443 F.3d 832, 836 (11th Cir. 2006). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issues of material fact and compels judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Holloman</u>, 443 F.3d at 836-37.

### B. Hall's Alleged Good Faith

The district court granted summary judgment on the grounds that Hall failed to comply with conditions precedent to suit. The contract required Hall to provide Liberty with "records and documents we request and permit us to make copies" prior to initiating a lawsuit. Hall acknowledges that this was an express condition precedent to suit, but argues that the district court erred in granting summary judgment because Hall made a good faith effort to provide the requested information.

Under Georgia law,[2] an insurer may require its insured to abide by the terms of his policy and cooperate with the insurer's investigation, as a precondition to

this circuit" that issues not raised in the parties' initial briefs on appeal are waived).

[2] In actions where jurisdiction is founded upon diversity of citizenship, state substantive law applies. <u>Royal Ins. Co. of Am. v. Whitaker Contracting Corp.</u>, 242 F.3d 1035, 1040 (11th Cir. 2001).

recovery. <u>KHD Deutz of Am. Corp. v. Utica Mut. Ins. Co., Inc.</u>, 469 S.E.2d 336, 339 (Ga. Ct. App. 1996). "A total failure to comply with policy provisions made a prerequisite to suit under the policy may constitute a breach precluding recovery from the insurer as a matter of law. If, however, the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury." <u>Diamonds & Denims, Inc. v. First of Ga. Ins. Co.</u>, 417 S.E.2d 440, 441-42 (Ga. Ct. App. 1992) (citations omitted). Where documents are unavailable, the insured has a duty to "cooperate with the insurer to obtain or reconstruct the information needed from other available sources." <u>Id.</u> at 442. The Georgia Supreme Court has held that an insured's failure "to provide <u>any</u> material information called for under . . . the policy" constitutes a breach of contract. <u>Halcome v. Cincinnati Ins. Co.</u>, 334 S.E.2d 155, 157 (Ga. 1985) (emphasis in original).

Hall does not challenge the district court's finding that he "submitted no records prior to the commencement of this lawsuit."[3] Nonetheless, Hall argues that there is an issue of fact as to whether he made a good faith effort to supply Liberty

---

[3] It was only after the commencement of suit that Hall began providing the requested documents. The express terms of the policy, however, required production of requested documents prior to suit.

6

with the requested documents.[4]  Hall relies on <u>Diamonds & Denims</u> for the

proposition that where an insured "cooperates to some degree or provides an

explanation for its noncompliance," summary judgment in favor of the insurer is

inappropriate.  417 S.E.2d at 442.  Hall argues that he cooperated "at least to some

degree" by informing Liberty that some of the documents it requested were burned

in the fire or otherwise unavailable.

In <u>Diamonds & Denims</u>, the insurance company did not specify which

documents it wanted the insured to turn over, but rather only made vague, broad

requests for "books and records."  <u>Id.</u>  The insured explained that all of its

documents were destroyed in the fire, but during the course of depositions the

insured's employees offered to provide alternative documentation.  The insurance

company, however, did not thereafter attempt to procure those documents.  In light

of the evidence of the insured's good faith, the court held that summary judgment

in favor of the insurer was inappropriate.

In the present case, by contrast, despite Liberty's repeated requests for

---

[4] Hall also argues that his failure to complete a proof of loss form prior to suit, as required under the policy, should also be excused because there is a genuine issue of material fact as to whether Liberty waived its right to demand a proof of loss.  We recognize that contractual prerequisites to suit, including clauses requiring the filing of a proof of loss form, may be expressly or implicitly waived.  <u>State Farm Mut. Auto. Ins. Co. v. Wright</u>, 224 S.E.2d 796, 822 (Ga. Ct. App. 1976).  There is a genuine issue of material fact as to whether the proof of loss requirement was waived by the statements of Liberty's employee, Arthur.  This does not affect the disposition of this case, however, because, as discussed <u>infra</u>, Hall failed to comply with other contractual prerequisites to suit.

7

specific documents, Hall failed to bring any documents to the July 15 meeting, not just those that he previously claimed were destroyed or unavailable. Given that Hall did not inform Liberty that all of the requested documents were unavailable prior to the meeting and did not attempt to provide alternative means of acquiring the information contained in those documents, we conclude that Diamonds & Denims does not control the outcome of this case. We agree with the district court that there is no genuine issue of material fact as to whether Hall made a good faith effort to comply with the conditions precedent to suit.[5]

C. Liberty's Alleged Bad Faith

Under Georgia law, "the insurer's failure to act with diligence and good faith in securing the necessary information [] will preclude the grant of summary judgment to the insurer on the issue of the insured's compliance with policy prerequisites." Id. at 441-42. Hall argues that any failure by him to perform contractual prerequisites to suit should be excused because Liberty acted in bad faith. He argues that Liberty repeatedly requested EUOs, despite knowing that Hall was unavailable due to incarceration.

---

[5] Hall also argues that he acted in good faith by agreeing to one EUO session and that it is of no consequence that due to disagreements between the attorneys over recording and admissibility, the session did not proceed as scheduled. The district court, however, explained, "Plaintiff's failure to provide any requested records would constitute grounds for summary judgment even if Plaintiff and the other individuals claiming losses had participated in EUOs." We agree that adequate grounds for affirmance exist and thus need not consider Hall's arguments that he made a good faith effort to schedule EUOs.

Hall's argument is unpersuasive given the circumstances. Liberty had a contractual right to conduct EUOs and procure documents in the year following the fire. Liberty was patient and reasonable, sending at least nine letters over the course of eight months to Hall's attorney in an attempt to schedule EUOs and procure documents. Hall does not deny receipt of Liberty's letters and, despite having the benefit of being represented by counsel, did not propose any alternative ways of conducting examinations or obtaining the requested information. Given that Liberty's requests were essentially ignored, it behaved reasonably by continuing to reach out to Hall's attorney and requesting dates in which EUOs could be conducted and documents could be exchanged. There is no evidence that Liberty's requests were made in bad faith.

We thus hold that the district court did not err in granting summary judgment on Hall's breach of contract claim for failure to satisfy conditions precedent to suit. The judgment of the district court is affirmed.

**AFFIRMED.**