[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10240
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 20, 2012
JOHN LEY
CLERK

D.C. Docket No. 7:11-cv-00086-HL

BOBBIE ROBERTS,

Plaintiff-Appellant,

versus

STATE FARM FIRE AND CASUALTY COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(June 20, 2012)

Before BARKETT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Bobbie Roberts, proceeding *pro se*, appeals from the district court's grant of

summary judgment in favor of State Farm Fire and Casualty Company ("State Farm") in her diversity lawsuit alleging a breach of an insurance contract. For the reasons stated below, we affirm.

## I.

Roberts purchased a renters insurance policy from State Farm for a one-year term, with a coverage of $50,000 for the loss of personal property. The policy imposed several duties on the insured in the event of a loss. Among other things, as often as State Farm reasonably required, the insured had to provide State Farm "with records and documents" requested by the company; submit to "statements" and "examinations under oath"; and, if possible, produce members of her household for an examination under oath. The policy further provided that the insured may not bring a lawsuit against State Farm unless she has complied with all policy terms, and must initiate the lawsuit "within one year after the date of loss or damage." Another provision stated: "When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply."

On April 23, 2010, a fire occurred in Roberts's residence, damaging the house and her personal property. She filed a claim under the policy, but State Farm's investigation revealed several suspicious circumstances surrounding the

2

fire, indicating a possibility of fraud on the part of Roberts. For instance, members of Roberts's family had a history of fire losses; Roberts's son owned the damaged house and had insurance on his property from another insurance carrier; an informant alleged that he was offered money to burn the home approximately 10 days before the fire; and Roberts was in bankruptcy at the time of the fire, was involved in a civil lawsuit over the purchase of another residence, and had to shut down her restaurant business due to health issues. On June 10 and 11, 2010, Roberts and her adult sons were arrested and charged with insurance fraud arising out of the fire loss.

On June 10, 2010, State Farm sent Roberts a letter, asking her and several members of her family to attend an examination under oath on June 23, 2010. State Farm also asked Roberts to produce various documents relevant to her claim, including monthly bank statements, tax returns, records reflecting any unreported income sources, loan and debt records, and records of any real estate transactions. State Farm cited the policy provisions requiring Roberts to comply with its requests and stated that it could take no further action on her claim until she and her family members submitted to the examinations and produced all requested documents that were possible to obtain.

Roberts came to the scheduled examination session along with her criminal

defense attorney. The attorney advised Roberts not to give a sworn statement in light of her pending criminal charges, and State Farm agreed to suspend the examination. However, State Farm told Roberts that she still had an obligation to produce the requested documents. Roberts agreed to send State Farm the documents as soon as she obtained them.

Subsequently, State Farm sent two letters to Roberts's attorney, asking that the examinations be rescheduled and the documents produced. The attorney responded by letter on September 7, 2010, stating that he had advised Roberts not to provide any documents or statements to State Farm, in light of her pending criminal case, even though negative consequences could arise from her refusal to participate in State Farm's investigation.

On October 5, 2010, State Farm wrote a letter to Roberts, stating that her failure to submit to examinations and to produce the requested documents constituted a material breach of the insurance policy. It warned that her insurance coverage was in "serious jeopardy," that any further delay in complying with the policy provisions could result in the denial of her insurance claim, and that State Farm was not waiving any of its rights under the policy. The letter further stated:

> You need to be aware that there are time limits contained within your policy with which you must strictly comply. This is not an extension of any time period under the policy. Continued delay may result in a

4

future denial based either upon your lack of cooperation and/or upon your failure to comply with the time periods contained in the policy.

Over the next several months, State Farm sent two more letters to Roberts, which, among other things, reminded her of the need for immediate cooperation and warned that State Farm was not waiving any defenses or time limitations under the policy.

On April 18, 2011, Roberts called State Farm and stated that she intended to comply with State Farm's previous requests, but expressed concern about the time remaining under the policy for filing suit. State Farm told Roberts that the Georgia Insurance Commissioner had extended the period for filing suit on fire losses to two years after the date of the loss. State Farm sent a letter to Roberts the following day, confirming the change in the law and stating that it would consider Roberts's claim if she immediately complied with all of its requests. It reiterated, however, that it was not waiving any defenses under the policy. On April 23, 2011, Roberts again contacted State Farm, requested a new date for the examinations, and expressed her intent to submit the required documents.

Two days later, on April 25, 2011, Roberts filed a lawsuit against State Farm, alleging a breach of an insurance contract, and State Farm removed the suit to federal court pursuant to 28 U.S.C. § 1332. After discovery, State Farm filed a

5

motion for summary judgment, arguing that Roberts was precluded from recovery because she breached the terms of the insurance policy by failing to submit to an examination under oath and to produce the requested documents. Roberts responded, essentially, that she cooperated with State Farm to the best of her ability and that she was forced to sue State Farm because the one-year limitations period in the policy was about to expire.

The district court granted summary judgment to State Farm, finding that Roberts breached the insurance policy by failing to produce the requested documents. The court also found, in relevant part, that Roberts had not identified any principle that would excuse her failure to comply with the policy terms.

## II.

On appeal, Roberts contends that the district court erred in finding that she breached the insurance contract, as she fully cooperated with State Farm and filed suit only because the one-year limitations period under the policy was about to expire. She acknowledges that State Farm had informed her of the new two-year limitations period, but argues that she had no proof of this change in the law and could only rely on the policy terms. She also suggests that the policy's one-year limitations provision violated Georgia law, thereby voiding her obligations under

the policy.[1]

We review "the granting of summary judgment *de novo*." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010). A district court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the movant satisfies its burden of production by showing that there is no genuine issue of fact, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008) (quotation omitted). "We draw all factual inferences in a light most favorable to the non-moving party." *Id.* Nevertheless, the non-moving party cannot create a genuine issue of material fact through speculation, *id.*, or evidence that is "merely colorable" or "not significantly probative," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

---

[1] In addition to addressing the merits of her claims, State Farm argues that Roberts's appeal should be dismissed because she failed to file record excerpts and to comply with procedural rules regarding the contents of her appellate brief. However, these procedural deficiencies have not prejudiced State Farm in any significant way, and they are not serious enough to warrant summary dismissal of Roberts's appeal. Accordingly, we will consider her arguments on the merits. *See Byrd v. Bates*, 220 F.2d 480, 481-82 (5th Cir. 1955) (declining to dismiss an appeal where the appellant violated multiple circuit rules concerning the filing and contents of briefs); *see also S.E.C. v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992) ("This Court provides pro se parties wide latitude when construing their pleadings and papers.").

Under Georgia law, an insured's failure to cooperate with the insurer in the investigation of a claim, without a valid excuse, may constitute a breach of the insurance contract, precluding any recovery by the insured. *See Halcome v. Cincinnati Ins. Co.*, 334 S.E.2d 155, 156-57 (Ga. 1985). In *Halcome*, the plaintiffs filed an insurance claim with their insurer for the loss of property contained in their car. *Halcome*, 334 S.E.2d at 156. The insurance company suspected fraud and asked the plaintiffs to submit to an examination under oath, pursuant to the terms of the insurance policy. *Id.* at 156-57. While the plaintiffs answered many questions, they refused to provide certain information concerning their finances. *Id.* at 157. The Georgia Supreme Court held that the plaintiffs breached the insurance contract by refusing to provide information relating to their income. *Id.* The court acknowledged that, in some circumstances, a plaintiff's refusal to provide requested documents might be excused due to privacy considerations. *Id.* However, because the case at bar involved suspected fraud, the plaintiffs' income and sources of income were relevant, and there was no basis to excuse their refusal to provide this information. *Id.*; *see also Allstate Ins. Co. v. Hamler*, 545 S.E.2d 12, 12-15 (Ga. Ct. App. 2001) (holding that, where the insurer suspected fraud, the insured's refusal to provide documentation relating to her income and debts constituted a breach of the insurance contract and warranted summary judgment in

8

the insurer's favor).

In this case, evidence shows that Roberts failed to perform her duties under the insurance policy, thereby breaching her insurance contract with State Farm. The policy required Roberts to submit to an examination under oath and to produce certain documents if requested by State Farm, and Roberts does not dispute this fact. State Farm requested the examination and a variety of documents in its letter of June 10, 2010. However, evidence shows that Roberts never submitted to the examination or provided the documents requested by State Farm, and nothing in the record suggests otherwise. Although Roberts contacted State Farm near the end of April 2011 and expressed her willingness to cooperate, she filed a lawsuit against State Farm before complying with any of its requests, thereby indicating her final decision not to cooperate.[2]

Roberts argues that she was excused from complying with State Farm's requests because the one-year limitations period in the policy forced her to file suit. We disagree. The Georgia Insurance Commissioner changed the statute of limitations for filing suit under a fire insurance policy to two years. *See* O.C.G.A.

---

[2] Roberts suggests in her brief that she attempted to set up the examination in November 2010, but was thwarted by her attorney and State Farm's claims representative. However, the record contains no evidence to support this assertion. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.").

§ 33-32-1; Ga. Comp. R. & Regs. 120-2-19-.01. State Farm expressly informed Roberts of this change in the law. Although State Farm did not provide proof of this change, it was not required to do so, and nothing prevented Roberts from verifying the applicable law on her own. *See Lewis v. Alderman*, 162 S.E.2d 440, 441-42 (Ga. Ct. App. 1968) (stating that one is presumed to know the law and cannot "in legal contemplation be deceived by erroneous statements of law").

Roberts also appears to argue that the one-year limitations provision voided her duties under the policy because the provision conflicted with state law. However, there is no authority to suggest that a single invalid term of an insurance policy, especially one that merely imposes a time limitation on filing suit, waives all duties of the insured under the policy while preserving all the duties of the insurer. Moreover, State Farm's insurance policy did not violate state law. It specifically provided that, in cases of conflict between state law and a policy provision, state law would apply.

In sum, evidence shows that Roberts breached the insurance policy by refusing to comply with State Farm's requests to submit to an examination and to provide certain documents. Because nothing excused Roberts from complying with those requests, she was precluded from recovery, and the district court did not err in granting summary judgment to State Farm. *See Halcome*, 334 S.E.2d

10

at 156-57; *Hamler*, 545 S.E.2d at 12-15.  Accordingly, we affirm.

**AFFIRMED.**