## A00A1910. ALLSTATE INSURANCE COMPANY v. HAMLER.
### (545 SE2d 12)

SMITH, Presiding Judge.

In this breach of contract action filed by Loretta Hamler against Allstate Insurance Company, the trial court denied summary judgment to Allstate. We granted Allstate's application for interlocutory appeal. Because the record shows that, contrary to the terms of the insurance policy issued to Hamler, Hamler failed to provide certain documents to Allstate during Allstate's investigation of her claim, we conclude that summary judgment in Allstate's favor was warranted. We therefore reverse.

In October 1996, several items, including large pieces of furniture, allegedly were stolen from Hamler's home, and Hamler submitted a claim to Allstate for approximately $26,000 under a homeowner's policy issued by Allstate. During a recorded statement taken by Allstate, Hamler stated she discovered the loss while recuperating from illness at her mother's home. She stated that her brother-in-law brought her and her son, Calvin Hamler, to her home so that she could get her car. According to Hamler, when they arrived at her home, they "went around to the back and . . . discovered what had gone on." She stated that Calvin "brought my attention" to the fact that "maybe something's been going on here" by pointing out that some patio chairs had been moved and that the back sliding door was open. She also stated that they immediately called the police after discovering the burglary and that she did not suspect anyone of the theft. When asked whether she had spoken to all of her neighbors to determine if they had seen or heard anyone, she replied, "I haven't spoken to anybody, and the neighbor right next door, they don't know anything."

Hamler was later examined under oath, and her testimony differed in certain respects from her earlier statements. She testified that while she was recuperating at her mother's home, "[d]uring the week prior to the incident," her mother took her to her home "to get some changes of clothes." Although she stated that she went inside and found everything to be normal, she also testified that when her mother brought her to get the clothes, her neighbor saw her in the driveway and asked, " 'Did they ever find out who took your furniture?' " Hamler testified that she replied, " 'No.' " When asked how she discovered the break-in, she testified that her neighbor, Roland Wellmaker, called her mother's house, talked with Calvin, and told him that a break-in may have occurred.[1] Calvin Hamler testified dur-

---

[1] Wellmaker testified during his deposition that while Hamler was away from her home over a two- or three-day period, he observed Calvin Hamler, along with two other men and one or two women, moving furniture from the home. He stated that Calvin told him that Hamler had given him the furniture.

ing his deposition that without Hamler's knowledge, he removed several items of furniture from the home. He claimed, however, that this furniture belonged to him. He testified that he told Hamler, after they "found out someone broke in the house," that he had taken his furniture. According to Calvin, he made this statement to Hamler on the same day they discovered the theft. Calvin took a king-sized bedroom suite, a living room suite, a wall unit, and a dinette set, among other things. Calvin later sold the furniture to a man named "Michael." Items reported stolen by Hamler included a dining room set, a bedroom suite, and an entertainment center.

After Allstate denied Hamler's claim, she filed this action. Allstate moved for summary judgment on two grounds. It first contended that Hamler had not complied with the "Concealment or Fraud" provision of the insurance policy. Allstate also argued that summary judgment was required because Hamler had failed to provide certain requested documentation. The trial court denied the motion. We need not reach the issue of whether Hamler breached the concealment or fraud provision because we agree with Allstate's contention that Hamler breached the following portion of the insurance contract concerning Hamler's duties after a loss: "In the event of a loss to any property that may be covered by this policy, you must . . . give us all accounting records, bills, invoices and other vouchers, or certified copies, which we may reasonably request to examine and permit us to make copies." Fulfillment of this requirement was a condition precedent to bringing suit. The policy recites that "[n]o suit or action may be brought against us unless there has been full compliance with all policy terms."

After Hamler's recorded statement was taken, Allstate sent Hamler a letter by certified mail requesting her to bring certain documents, as required by the insurance policy, to her examination under oath. The list of documents was specific and detailed. Hamler brought a portion of the documents, including bank statements, receipts or other documents concerning items involved in the loss, a copy of her driver's license, photographs of items allegedly stolen, and a copy of the police reports. Hamler also agreed to provide copies of cancelled checks for the purchase of items involved in the lawsuit.

Hamler refused, however, to provide documentation showing her amount of income and debts at the time of the incident, claiming that this information was irrelevant. For example, she refused to provide federal and state tax returns for 1992-1995 or documentation reflecting income for the years 1995-1996, documents which would have borne upon the issue of possible financial motive for making the claim, according to Allstate. She refused to provide copies of telephone or other utility bills, which, Allstate argued, would have provided further information concerning Hamler's financial motive. Nor

would she provide monthly credit card or other loan statements, except to the extent that those documents showed the purchase of items allegedly stolen. Hamler also refused to provide any records showing hospital admissions and discharges, which may have been relevant to her claim that she was not at home when the alleged burglary occurred.

We agree with Allstate that Hamler breached the contract of insurance by failing to provide these documents, even though Hamler did provide certain other information. The issues here are similar to those in *Halcome v. Cincinnati Ins. Co.*, 254 Ga. 742 (334 SE2d 155) (1985). In *Halcome*, the plaintiffs submitted a claim to Cincinnati Insurance Company after several items were allegedly stolen from their automobile. Like the insurance policy in this case, the plaintiffs' policy required them to provide records and documents requested by Cincinnati as often as required by the insurer. Id. at 743. During the plaintiffs' examination under oath, they provided some of the requested information. They "answered numerous questions regarding their activities at the time of the loss." Id. But they also refused to answer questions or otherwise provide information concerning their income or sources of income. In particular, they refused, among other things, to provide federal income tax returns and W-2 forms for five years before the loss. Id. Cincinnati claimed, as does Allstate, that this information was needed to determine the plaintiffs' "possible motives for submitting a false, fraudulent, or exaggerated claim, and that the failure of the [plaintiffs] to provide this information prohibited the company from completing its investigation of the claim." Id.

The Supreme Court of Georgia concluded in *Halcome* that the plaintiffs breached their contract of insurance by failing to provide information or documents requested by Cincinnati, stating that if they "failed to provide *any* material information called for under . . . the policy . . . they breached the insurance contract." Id. at 744. The Court found that because evidence of possible fraud existed, "[a] complete investigation of the claim include[d] an investigation of the suspected fraud." Id. The plaintiffs' recent income and sources of income were relevant, and failure to comply with the insurer's requests was a breach of the terms of the insurance policy. Id. Here, too, Hamler contends that the information sought by Allstate is irrelevant. As in *Halcome*, however, Allstate was authorized to suspect fraudulent behavior. Evidence was presented that Hamler may have misrepresented material facts concerning her discovery of the claim, such as whether any of her neighbors may have seen suspicious activity and whether she had spoken with any neighbors concerning the alleged burglary. Furthermore, it appears that her own son may have taken at least some of the items she claimed were stolen. As in *Halcome*,

the information sought by Allstate was relevant to its suspicion of fraud and to a possible financial motive. Hamler refused to comply with Allstate's request for this relevant information and breached her insurance contract. Summary judgment in Allstate's favor consequently was warranted.

We note Hamler's argument that Allstate raised allegations of fraud only after this lawsuit was filed, unlike *Halcome* in which the insurer made a showing on the record that it suspected fraud before the insured filed suit. This contention is belied by the record. After taking Hamler's recorded statement and examining her under oath, Allstate sent Hamler a letter stating that it denied her claim based on the concealment and fraud provision in her policy. Hamler filed suit some four months later.

Also contrary to Hamler's argument, *Diamonds & Denims v. First of Ga. Ins. Co.*, 203 Ga. App. 681 (417 SE2d 440) (1992) is not controlling. In that case, after the plaintiff's warehouse was destroyed by fire, the plaintiff made a claim under its insurance policy. The insurer made a general request that plaintiff "produce all books and records proving the loss." Id. at 682. The plaintiff's officers did not produce these documents but explained that all books and records concerning the loss were destroyed in the fire. Id. Also, the plaintiff did not provide information sought by the insurer that related to other corporations previously operated by its principal shareholder. Id. The plaintiff's principal shareholder and president did, however, offer to provide information concerning the company's bank account and federal tax identification number. Id. In ruling on the issue of whether plaintiff breached a provision of its insurance policy requiring it to produce books and records concerning property loss, this court made the following statement:

> A total failure to comply with policy provisions made a prerequisite to suit under the policy may constitute a breach precluding recovery from the insurer as a matter of law. If, however, the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury. Moreover, the insurer's failure to act with diligence and good faith in securing the necessary information also will preclude the grant of summary judgment to the insurer on the issue of the insured's compliance with policy prerequisites.

(Citations omitted.) Id. at 683.

We concluded that the trial court erred in finding that the plaintiff completely failed to comply with the insurance policy, noting that the record was "devoid of any evidence that appellee provided appel-

lant with detailed lists of the specific documents it sought other than to reiterate in general language the policy requirement for production of 'books and records.'" *Diamonds & Denims,* supra at 683. We also stated that despite the offer made by the plaintiff's officers to provide certain pertinent documentation, no evidence showed that the insurer "followed up these generalized statements with specific requests, sought releases from appellant in order to obtain records from other sources, or otherwise pursued the matter further. [Cits.]" Id.

We do not agree with Hamler that under *Diamonds & Denims,* because she provided some documentation requested by Allstate, a fact question exists as to whether she complied with the policy terms. Unlike the plaintiff in that case, Hamler refused to provide information that clearly would have reflected on possible financial motive for making a claim, despite a lengthy and detailed request by Allstate. During Hamler's examination under oath, her counsel repeatedly and adamantly refused to agree to provide requested documentation showing her income, as did the plaintiffs in *Halcome,* despite numerous, clear requests by Allstate's counsel, along with explanations by Allstate's counsel as to the relevance of the requested documents. We also note that this court in *Diamonds & Denims* distinguished that case from *Halcome,* concluding that in *Diamonds & Denims,* fraud was not raised as an issue by the insurer before suit was filed. Id. at 684. But here, as previously discussed, Allstate showed that it suspected fraud before Hamler filed suit. Like the plaintiff in *Halcome,* Hamler failed to provide material information relevant to the insurer's investigation of her claim and therefore breached the contract of insurance. The trial court erred in denying Allstate's motion for summary judgment.

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 17, 2001.

*Claxton & Claxton, William P. Claxton, Kelley C. Herrin,* for appellant.

*Teresa A. Mann,* for appellee.