[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-16169

_____

D.C. Docket No. 1:10-cv-00131-TCB

STATE FARM FIRE AND CASUALTY COMPANY,

Plaintiff - Counter Defendant - Appellee,

versus

KING SPORTS, INC., et al.,

Defendants,

ROGER CLEVELAND GOLF COMPANY, INC.,

Defendant - Counter Claimant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 4, 2012)

Before JORDAN and HILL, Circuit Judges, and HOOD,[*] District Judge.

HOOD, District Judge:

Roger Cleveland Golf Company, Inc. ("Cleveland Golf"), appeals the district court's decision to grant summary judgment in favor of State Farm Fire & Casualty Company ("State Farm") with respect to State Farm's declaratory judgment action and Cleveland Golf's counterclaims. Among other things, State Farm sought and obtained a declaration that it need not afford coverage to its insured, Kings Sports, Inc. ("King Sports"), with respect to a lawsuit brought by and a judgment obtained by Cleveland Golf because both King Sports and its owner, Jui-Chen "Jimmy" Chang, failed to abide by, satisfy, comply with, or fulfill the duties imposed on them by the policy's "general conditions," including an obligation to cooperate in the defense of claims made against them. We affirm the decision of the district court for the reasons stated below.

## I.

King Sports advertised and sold golf clubs online. The company identified Chang as the owner and primary contact in an application, completed in English, for a business liability policy made to State Farm in 2001. State Farm issued the

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

2

policy, written in English, to King Sports and insured that entity from December 14, 2002, through December 14, 2008.

In 2007, King Sports was sued for alleged trademark infringement of golf clubs and accessories by Nike and Callaway Golf. Those claims were defended by and settled through the efforts of counsel hired by State Farm for under $20,000 each within months of their filing.[1]

In June 2008, Cleveland Golf sent King Sports a cease-and-desist letter, alleging that King Sports was violating Cleveland Golf's trademarks by advertising and selling golf clubs that looked like clubs manufactured by but which were not, in fact, manufactured by or with the permission of Cleveland Golf. On July 2, 2008, State Farm sent King Sports a reservation-of-rights letter informing King Sports that State Farm reserved its right to not defend or indemnify King Sports with respect to Cleveland Golf's claims under certain policy exclusions.

Eventually, when no resolution of the dispute was reached, Cleveland Golf filed suit against King Sports in the district court on August 18, 2009. In the Complaint, Cleveland Golf averred direct trademark infringement, unfair

---

[1] State Farm never shared the information obtained during the defense of the Nike and Calloway matters, which included recorded statements and written discovery, with Attorney Bruce Hedrick, who was retained to represent King Sports in the defense of the suit by Cleveland Golf.

3

competition, false advertising, trade dress infringement, trademark dilution, trademark counterfeiting, unfair and deceptive trade practices, violations of the Georgia anti-dilution statute, and common-law trademark infringement.  The Complaint was eventually amended to include averments against Chang.

State Farm attempted to contact Chang and King Sports about the suit by phone, on August 20, 2009, only to learn that the number it had been provided was no longer in service.  State Farm sent correspondence requesting contact from its insured on August 20, 2009, and again on September 2, 2009.  State Farm eventually learned that Chang was out of the country and unreachable.  State Farm also learned that his son, Ike Chang, who had assisted State Farm in communicating with King Sports and Jimmy Chang with respect to the Nike and Calloway disputes, was out of state and unwilling to assist in the defense of the Cleveland Golf case.  State Farm again sent King Sports and Chang a letter on November 6, 2009, requesting contact about the claim and advising that failure to communicate or cooperate could result in a denial of coverage.  Other letters requesting that Chang or King Sports contact State Farm were sent on November 12, 2009, and February 4, February 19, March 25, April 1, April 5, April 16, May 26, June 22, June 25, July 20, August 16, and September 2, 2010, but no response was received.  In addition to the letters, phone calls were made on multiple

4

occasions by State Farm representatives to all known phone numbers, and email messages were sent as well. In the midst of State Farm's efforts to contact its insured by mail, on November 6, 2009, a State Farm claim representative visited Kings Sports' business address only to find the space vacant.

State Farm personnel then searched the Internet in an attempt to obtain working contact information for Chang and King Sports, even turning to its own internal investigation division to search for names, addresses, and phone numbers that would allow State Farm to contact Chang and King Sports, but had no success. No response was received with respect to messages left at a phone number which was discovered and thought to be connected with King Sports, nor was any response received in response to a personal visit by a State Farm representative to or correspondence left at an address which was receiving other mail intended for King Sports.

While King Sports received at least some of State Farm's letters concerning Cleveland Golf's claim, State Farm never received a substantive response or any of the information it requested from Chang or King Sports. Thus, State Farm could never get King Sports' "version of what happened" with respect to the allegations.

5

In the meanwhile, the lawsuit filed by Cleveland Golf was still pending, and State Farm retained attorney Bruce Hedrick to represent King Sports and Chang. In a November 2009, letter addressed to Jimmy Chang and King Sports and received by King Sports, State Farm again made a reservation of rights, outlined King Sports' duty to cooperate in the investigation and defense of Cleveland Golf's lawsuit, and then advised the insureds that it had retained Hedrick as counsel for King Sports and Chang. By that point, Hedrick had already contacted counsel for Cleveland Golf, leaving a November 2, 2009, voicemail message which stated, in part:

> ...what State Farm has told me, they're not going to pay that but about to just move forward with the dec action because the Insured is not cooperating with them and unfortunately, at the moment, not cooperating with me to enable me to file an answer. [2]

[DE 119 at 00:36-00:51.]

For Hedrick, defending Chang and King Sports would prove to be no easy task. During the months that Hedrick worked on the case, he repeatedly attempted to contact King Sports and Chang through telephone calls, text messages, email,

---

[2] Jill Reina, State Farm's corporate designee, has testified that it was too early at that date to determine whether King Sports or Chang had adequately cooperated or not. Cleveland Golf points out that, ordinarily, State Farm representatives would "split the file," with one representative maintaining the file on the issue of defense and another on the issue of coverage. In this case, until mid-December 2009, State Farm agent Latasha Williams was the sole claims representative working on this case.

and regular mail, requesting a response each time.  While he did hear from Chang on at least two occasions and Andy Lee, an employee of King Sports, on multiple occasions, Hedrick spent the better part of his time and effort trying to get his clients to contact him about the litigation, with little success.  Even when he did receive communications, no one ever provided information to Hedrick that would allow him to respond to the substantive allegations in the Complaint.

After obtaining numerous extensions of time from the court, Hedrick finally filed an answer in the underlying suit on behalf of King Sports and Chang on January 15, 2010 – an answer that he felt was inadequate and had deficiencies that were due to his inability to communicate with his clients about the case. Then, in February 2010, Lee told Hedrick that he was no longer affiliated with King Sports and that he did not want Hedrick to communicate with him further. Lee understood that King Sports and Chang's insurance coverage could be in jeopardy if the insured parties did not communicate with Hedrick.  Lee passed along the email to others at King Sports but he did not, however, provide an alternate contact at King Sports with whom Hedrick could communicate, despite Hedrick's request for that information.  Hedrick heard nothing further from Chang or anyone at King Sports.

Hedrick filed a Notice of Intention to File Motion for Withdrawal on February 12, 2010, and a Motion to Withdraw as Attorney for King Sports and Chang on March 9, 2010. On March 10, 2010, Cleveland Golf also sent King Sports and Chang an email, in Mandarin and English, explaining that a failure to cooperate and communicate with Hedrick could jeopardize insurance coverage under the policy issued by State Farm.[3] Counsel for Cleveland Golf included a message from Hedrick informing King Sports and Chang that if they wanted Hedrick to represent them they needed to contact him immediately. The message supplied all of Hedrick's contact information, including his email address, direct office phone number, general office phone number, and personal cell phone number.

Neither Hedrick nor State Farm heard from Lee, Chang or King Sports in response to the email from Cleveland Golf's counsel. Ultimately, the Motion to Withdraw was granted over Cleveland Golf's objection on March 30, 2010. Although the Motion for Withdrawal was silent as to the reasons for Hedrick's request for relief, he later testified that he sought to withdraw due to his clients' complete lack of cooperation.

---

[3] State Farm also sent to King Sports, at Hedrick's request, correspondence in Mandarin which provided Hedrick's contact information and requesting that contact be made with him.

Strangely enough, Lee was still in communication with Cleveland Golf, and he entered into a "Settlement Agreement" with Cleveland Golf agreeing to a $1,000,000 judgment, which he executed as the "owner" of King Sports.[4] Cleveland Golf agreed not to pursue King Sports for the amount of the judgment, agreeing that it would, instead, seek to collect the amount from State Farm, and King Sports assigned any claims it might have against State Farm to Cleveland Golf under its insurance policy.

As it happened, neither King Sports, Chang, nor Cleveland Golf informed State Farm of the Settlement Agreement, nor did anyone obtain State Farm's consent to it. Cleveland Golf understood that approval of any settlement was required under the terms of the insurance policy in order for coverage to apply. On July 15, 2010, the district court entered a consent judgment in favor of Cleveland Golf and against King Sports in the amount of $1,000,000, in accordance with the settlement agreement.

Meanwhile, on January 15, 2010, State Farm filed a complaint in the district court, seeking a declaratory judgment against King Sports and Cleveland Golf.

---

[4] When State Farm learned of these settlement discussions, it sent Chang and King Sports yet another letter on June 25, 2010, reiterating its request that they contact State Farm immediately and pointing out that portion of the insurance policy which provided that, "[e]xcept at their own cost, no insureds will voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent." [DE 106-1 at 84-85.]

9

State Farm later amended its complaint to seek relief against Chang, King Sports, Inc., and Cleveland Golf, including a declaration that it owed no coverage whatsoever to King Sports and/or Chang because both failed to abide by, satisfy, comply with or fulfill the duties imposed on them pursuant to the policy's "general conditions," specifically their obligation to cooperate in the defense of the case, and that, by extension, Cleveland Golf could not recover against it.  Cleveland Golf answered the second amended complaint on October 26, 2010, averring in a counterclaim, as the assignee of King Sports and a putative third-party beneficiary of State Farm and King Sports' contract of insurance, that State Farm had breached its duty to defend King Sports with respect to the suit by and between Cleveland Golf and King Sports and to indemnify King Sports for sums it was legally obligated to pay Cleveland Golf as a result of the consent judgment entered into by Cleveland Golf and King Sports.

## II.

We review a district court's decision to grant summary judgment de novo and utilize the same standard for review as utilized by the district court.  Perry v. Sec'y Florida Dept. of Corr., 664 F.3d 1359 (11th Cir. 2011); Miccosukee Tribe of Indians of Fla. v. United States, 566 F.3d 1257, 1264 (11th Cir. 2009).  Summary judgment is proper when no genuine issue as to any material fact is present and the

10

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

"Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324.  "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id.

## III.

Cleveland Golf's argument on appeal turns on the idea that State Farm orchestrated King Sports and Chang's failure to cooperate by not seeking their

11

cooperation in good faith with respect to the defense of Cleveland Golf's lawsuit. The undisputed evidence, however, demonstrates that State Farm made at least a reasonable effort to obtain King Sports and Chang's cooperation, and we conclude that no fair minded jury could conclude from that evidence that State Farm or Hedrick acted other than diligently and in good faith in their respective efforts to secure information from King Sports and Chang and to provide a defense of the lawsuit filed by Cleveland Golf.  Because King Sports and Chang then failed to cooperate in the defense of that lawsuit, notwithstanding State Farm's efforts, recovery on the policy is appropriately foreclosed for King Sports, Chang, and, by extension, Cleveland Golf.  Summary judgment was properly granted in favor of State Farm by the district court.

Under Georgia law, "[i]nsurance is a matter of contract[,] and rules governing construction of contracts are applicable to insurance contracts."  Wilson v. S. Gen. Ins. Co., 349 S.E.2d 544, 545 (Ga. Ct. App. 1986) (quoting Nationwide Mut. Ins. Co. v. Ware, 231 S.E.2d 556, 559 (Ga. Ct. App. 1976)).  Thus, "terms in an insurance policy are given their ordinary and customary meaning."  Stagl v. Assurance Co. of Am., 539 S.E.2d 173, 175 (Ga. Ct. App. 2000) (citing Boardman Petroleum v. Federated Mut. Ins. Co., 498 S.E.2d 492 (Ga. 1998)).  When a duty to cooperate is included in a contract,

12

> The insured is obligated to assist in good faith in making every legitimate defense to a suit for damages. If he refuses to give the information which the insurer needs in establishing the defense, or absents himself so that his testimony at the trial cannot be obtained, recovery on the policy should be denied, if the insurer acts with good faith and diligence.

H.Y. Akers & Sons, Inc. v. St. Louis Fire & Marine Ins. Co., 172 S.E.2d 355, 359 (Ga. Ct. App. 1969).

Thus, an insurer may "claim its relief of obligation to make payment when the insured fails to cooperate" in a material fashion. Id. at 358; see also S. Mut. Ins. Co. v. Mason, 445 S.E.2d 569, 572 (Ga. Ct. App. 1994) ("It is well established that the insured has a duty to cooperate with his insurer in all aspects of a lawsuit and to make a full, fair, complete, and truthful disclosure of all facts relating to the [incident].") (quoting Hurston v. Ga. Farm Bureau Mut. Ins. Co., 250 S.E.2d 886, 888 (Ga. Ct. App. 1978))); Wolverine Ins. Co. v. Sorrough, 177 S.E.2d 819, 820 (Ga. Ct. App. 1970) ("The cooperation clause in a liability insurance policy is a material condition of liability, and a breach of it by one who is insured ... relieves the insurer of any obligation to defend a damage action against the insured."); St. Paul Fire & Marine Ins. Co. v. Gordon, 158 S.E.2d 278, 279 (Ga. Ct. App. 1967) ("insured does have an obligation to co-operate with his insurer in the investigation of accidents, the securing of evidence, giving notice of the accident

13

and of claims or suits brought against him arising out of it, in attending court, assisting as he can at the trial, and in making full, fair, complete and truthful disclosures of the facts known to him relative to the accident when called upon to do so").

While the question of an insurer's bad faith or lack thereof is a question of fact reserved to the finder of fact in many situations, the issue can be decided as a matter of law where there is no evidence of bad faith, as is the case in the matter before us.  See Wolverine Ins., 177 S.E.2d at 820; cf. State Farm Mut. Auto. Ins. Co. v. Ainsworth, 402 S.E.2d 759, 765-66 (Ga. Ct. App. 1991) (citing Strickland v. Am. Home Assur. Co., 367 S.E.2d 241, 242 (Ga. Ct. App. 1988); comparing Int'l Indem. Co. v. Collins, 367 S.E.2d 786 (Ga. 1988)) (holding that trial court properly denied summary judgment on issue of whether insurer denied coverage in bad faith because there was evidence of insurer's delay in obtaining required information and informing others of necessity of prompt provision of information or other proof); State Farm Mut. Auto Ins. Co. v. Acheson, 355 S.E.2d 128, 129 (Ga. Ct. App. 1987) (citing Binns v. Metro. Atlanta Rapid Transit Auth., 301 S.E.2d 877, 878 (Ga. 1983); Ga. Farm Bureau Mut. Ins. Co. v. Matthews, 254 S.E.2d 413 (Ga. Ct. App. 1979)) (holding that district court erred in dismissing insured's request for penalties and attorneys fees against insurer where record did

14

not support finding that there was no evidence of bad faith or that issue of liability was so close as to require a finding of good faith).  If the evidence shows that there was no bad faith on the part of the insurer with respect to obtaining the cooperation of the insured, judgment as a matter of law is then appropriate if the evidence demonstrates that an insured breached its contractual duty to cooperate in the investigation and defense of a claim.  See Allstate Ins. Co. v. Hamler, 545 S.E.2d 12, 15 (Ga. Ct. App. 2001) (holding that trial court erred when it denied insurer's motion for summary judgment where insured breached contract of insurance when it provided some information but failed to provide material information relevant to insurer's investigation of claim); Diamonds & Denims, Inc. v. First of Ga. Ins. Co., 417 S.E.2d 440, 442 (Ga. Ct. App. 1992) (citing Saft America, Inc. v. Ins. Co. of N.A., 271 S.E.2d 641 (1980); St. Paul Fire & Marine Ins., 158 S.E.2d 278) ("[T]he insurer's failure to act with diligence and good faith in securing the necessary information also will preclude the grant of summary judgment to the insurer on the issue of the insured's compliance with policy prerequisites."); cf. Hurston v. Ga. Farm Bureau Mut. Ins. Co., 250 S.E.2d 886, 888 (Ga. Ct. App. 1978) ("[I]f the facts as either stipulated or shown by the evidence demand a finding of a breach of the [cooperation] clause by the insured, a verdict should either be directed or entered for the insurance company.").

15

Cleveland Golf argues that evidence has been presented from which a reasonable juror could conclude that State Farm failed to act in good faith and with diligence in securing King Sports' cooperation in defending the matter and that, as a result, the district court erred when it concluded that recovery on the policy was not available in the absence of the insureds' cooperation.  We disagree.

Cleveland Golf points first to Attorney Hedrick's voicemail left for its counsel on November 3, 2009, shortly after Hedrick was retained to represent King Sports, in which he indicated that his client was not cooperating with its insurer or him and that the insurer was not sure it would pay on any claim if there was a lack of cooperation.  Cleveland argues that this message was particularly meaningful for two reasons: (1) because Hedrick's voicemail was left after State Farm's coverage counsel had advised that the claims it faced in an identical suit were "virtually indefensible, and that significant potentially covered damages could be awarded" and (2) because both Hedrick and State Farm's corporate representative agreed, during testimony in the present case, that it was too early at that point to determine whether the insured had cooperated or not.

From this evidence, it is clear that State Farm and Hedrick were concerned about whether the insureds would cooperate from the earliest stages of the litigation, but we are not persuaded that this is evidence from which a reasonable

16

juror could conclude that State Farm or Hedrick were acting to secure a lack of cooperation from King Sports or Chang or to otherwise act in bad faith. Notably, the facts are not contrary to nor do they take away the conclusions that may be naturally drawn from State Farm's efforts over the course of nearly two years and Hedrick's repeated efforts over a period of more than six months – by letter, phone call, email, and personal visit to the physical headquarters of King Sports – to contact and gain the cooperation of King Sports and Chang once Cleveland Golf gave notice of its claims and, subsequently, filed its lawsuit. A reasonable juror could only conclude that State Farm and, in turn, Hedrick were diligently seeking a response and the cooperation of King Sports and Chang. Further, no one, including a reasonable juror, would be surprised to learn that State Farm and Hedrick had these concerns in light of the lack of substantive communications about the lawsuit received by Hedrick from Lee, who was Hedrick's only contact at King Sports, including Lee's purported disassociation with King Sports during the course of the litigation.

Cleveland Golf also argues that a jury could conclude that State Farm did not seek in good faith to provide a defense to King Sports and Chang because State Farm did not "split" the coverage and defense files with respect to its lawsuit against King Sports and Chang; did not provide Hedrick with information

17

gathered in prior, similar lawsuits against the insured; and did not advise Hedrick that the individuals associated with King Sports spoke Mandarin Chinese as a "first language," not English.  Again, we disagree.

In the first instance, even if we assume that State Farm had an ethical duty to "split" the file, there is no evidence that any specific information and, notably, no privileged information was ever shared between coverage counsel and Hedrick or that the failure to split the file caused State Farm or Hedrick to abdicate their obligation to seek the insured's cooperation in good faith.  Neither has Cleveland Golf identified any legal basis for the idea that State Farm was required to provide information from other cases to Hedrick nor any suggestion as to how sharing that information might have improved State Farm and Hedrick's chances of obtaining King Sports or Chang's cooperation.  As to State Farm's supposedly meaningful failure to disclose its clients' preference for communication in Mandarin Chinese, the contract of insurance is in English, and Cleveland Golf has not identified any contractual obligation between the insurer or insured to communicate in Mandarin Chinese.  Further, Hedrick communicated with Lee in English, and it appears that Lee understood him.  Hedrick also had correspondence translated into Mandarin Chinese, to no apparent avail, for there is no evidence that receiving correspondence in Mandarin rather than in English prompted his clients to provide

18

him any information or to otherwise cooperate with him or State Farm in the investigation or defense of the suit.  In other words, we are not persuaded that a reasonable juror could conclude from this evidence that State Farm acted in bad faith when it sought to secure its insureds' cooperation.

Frankly, the evidence presented in this case leaves no one wondering whether State Farm might have done something differently or taken just one more step and secured the insured's cooperation.  Thus, factually, this case is distinguishable from Wolverine Ins. Co. v. Sourrough, in which the Georgia Court of Appeals concluded that there was an issue of fact for the jury as to whether the insurer had made a reasonable effort to obtain its insured's cooperation.  177 S.E. 2d at 821.  Wolverine Insurance had difficulty obtaining the cooperation of its insured with respect to the investigation of a motor vehicle collision and, ultimately, sent a registered letter outlining its unsuccessful efforts, requesting cooperation, and explaining that coverage could be disclaimed if cooperation was not forthcoming.  Id. at 820-21.  Unlike the present case, however, the insured in *Wolverine* accepted the letter and made an appointment by telephone with the insurance company's adjuster, agreeing to meet him at his office.  Id. at 821.  As it happened, when the insured went to the office, the adjuster was out.  Id.  Although he was asked to call back and make another appointment, the insured did not.  Id.

19

So, the adjuster tried to call the insured at his home only to learn from his wife that the insured was at work. Id. The adjuster telephoned the insured's workplace and was told when the insured would get off of work and where he was working. Id. Wolverine Insurance never got the details about the accident that it wanted, though, because the insured and the adjuster never managed to get together for the exchange of that information. Id.

By contrast, the undisputed material facts demonstrate that State Farm and Hedrick made repeated efforts to secure the insured's cooperation in defending the claim of Cleveland Golf. Multiple letters, telephone calls, personal visits, email correspondence, and text messages were employed to invite the insureds' cooperation. State Farm even sought new ways to contact Chang and others at King Sports when old addresses and phone numbers were no longer useful for contacting them. At the end of the day, no matter what State Farm and Hedrick did, no cooperation was forthcoming. There is no point in the story of State Farm and Hedrick's efforts where one wonders whether one of them "dropped the ball" when it came to seeking the insureds' cooperation. Rather, their reasonable efforts to reach King Sports and Chang and to communicate the need to cooperate in the investigation and defense of Cleveland Golf's claims were never met with anything but silence as to issues of substance. There is no evidence of bad faith,

20

only King Sports and Chang's utter failure to cooperate in the defense of that underlying suit.  Thus, as a matter of law, State Farm is relieved of any obligation of coverage with respect to Cleveland Golf's action against King Sports and Chang, and by extension, any obligation to King Sports' assignee, Cleveland Golf.[5]  See H.Y. Akers & Sons, 172 S.E.2d at 359 (citing Indemnity Ins. Co. of North America v. Smith, 78 A.2d 461, 463 (Md. 1951)) ("The judgment creditor, who sues on a policy indemnifying the insured against claims for damages, stands in the shoes of the insured and is chargeable like the insured with any breach of conditions on which liability depended.").

Accordingly, we **AFFIRM** the decision of the district court.

---

[5]  Having reached the conclusion that State Farm was relieved of any obligation of coverage with respect to Cleveland Golf's claim due to its insureds' failure to cooperate in the investigation and defense of that lawsuit, we do not reach the issue of whether King Sports, Chang, and Cleveland Golf's failure to seek State Farm's approval of the Settlement Agreement would have precluded recovery under the contract of insurance, in any event.